SUSAN M. CHEHARDY, Chief Judge.
| ¡Appellant, Julio Romero-Zambrano, appeals from a judgment dismissing his claim for damages against defendant, U.S. Agencies Casualty Ins. Co., in this automobile accident suit. For the reasons that follow, we affirm the judgment of the trial court.

FACTS AND PROCEDURAL HISTORY

On November 1, 2012, Mr. Romero filed a petition for damages, seeking recovery for injuries sustained in an automobile accident with Natasha Bell on November 8, 2011. In the petition, defendant named as defendants Natasha Bell, U.S. Agencies Casualty Ins. Co. (liability carrier), Imperial Fire and Casualty Ins. Co., and U.S. Agencies Casualty Ins. Co. (uninsured motorist carrier).
Following discovery, the trial court dismissed with prejudice Mr. Romero’s claims against Imperial and U.S. Agencies, as liability carrier only, having granted their respective motions for summary judgment on July 10, 2013 and November |¾19, 2013. Mr. Romero filed a motion for new trial, objecting to the summary judgment rendered in favor of U.S. Agencies.
At a hearing on the motion on January 7, 2014, the parties stipulated that Ms. Bell was responsible for the automobile accident and that she was uninsured at the time of the accident. In exchange for this stipulation, the parties entered into a consent judgment whereby Mr. Romero agreed to withdraw his motion for new trial and to dismiss with prejudice his claims against Ms. Bell and U.S. Agencies as liability carrier.
The matter then proceeded to a bench trial wherein Mr. Romero testified that at approximately 4:00 p.m. on the afternoon of November 8, 2011, while he was stopped at a red light at the intersection of Causeway Boulevard and West Napoleon Avenue in his Mitsubishi Lancer, a Ford F150 truck, driven by Natasha Bell, struck the rear of his vehicle. Mr. Romero explained that he sensed pain in his neck and back and that his vehicle was rendered inoperable by the collision. He testified that the responding police officer grabbed him by the neck and told him not to move, which he explained the officer did because the officer thought Mr. Romero may have injured his neck. However, Mr. Romero testified that he did not tell the officer he was hurt and that the officer did not communicate with him because he cannot speak English. In the police report, the officer indicated that Mr. Romero did not sustain an injury and classified the extent of damage to Ms. Bell’s vehicle as “very *145 minor” and the extent of damage to Mr. Romero’s vehicle as “minor/moderate.”
After leaving the scene of the accident, Mr. Romero proceeded to the law office of Riguer Silva, where he obtained a “piece of paper” and then continued downstairs to the Kenner Therapy and Rehabilitation Clinic. That day he received electric therapy and massage, which he continued to receive on a weekly basis | thereafter. He could not definitively state whether the treatment he received on the day of the accident was administered by a doctor; and the medical records confirm that Mr. Romero was first examined by a doctor at the clinic on November 10, 2011, two days after the accident. Following this examination, Mr. Romero was diagnosed with cervical strain, lumbar strain, paralumbar spasm, bilateral paraspinous spasm, bilateral trapezius spasm, and right SCM spasm. After six months of treatment, his symptoms were resolved and he was released from care.
Mr. Romero also introduced at trial an “Uninsured/Underinsured Motorist Bodily Injury Coverage Form” in which coverage for bodily injury sustained in an accident caused by an uninsured/underinsured motorist (“UM”) was waived. This form was undated, was initialed by “JD,” and signed by “Julio D Ramero Zambrano.” In his deposition, Mr. Romero acknowledged that the initials and signature were his and then recanted, stating that they were not. Then, at trial, Mr. Romero maintained that neither the initials nor the signature were his.
Finding that there was a valid waiver of UM coverage, that Mr. Romero was not injured in the accident, and that Mr. Romero’s testimony was “incredible,” the trial court ruled in favor of appellee and dismissed the case at Mr. Romero’s cost. This appeal followed.

DISCUSSION

On appeal, Mr. Romero raises two assignments of error: (1) the trial court erred in finding the UM waiver form was valid; and (2) the trial court erred in finding in favor of appellee since Mr. Romero established a prima facie case by a preponderance of the evidence.
With respect to Mr. Romero’s first assignment of error, appellee does not contest Mr. Romero’s position, conceding that the UM waiver form as undated is invalid. Appellee nonetheless maintains that the trial court’s ruling was correct 1¡¡due to Mr. Romero’s failure to prove he was injured in the accident.
Thus, we turn our attention to Mr. Romero’s second assignment of error in which he argues that appellee failed to overcome the Housley presumption.[1] This Court, in Harrington v. Wilson, 08-544 (La.App. 5 Cir. 1/13/09), 8 So.3d 30, 38-39, held as follows regarding the Housley presumption:
In a personal injury action, the plaintiff must prove by a preponderance of the evidence that the claimed injuries resulted from the accident at issue. If the medical testimony establishes that it is more probable than not that subsequent injuries were caused by the trauma suffered in the incident, the burden of proof is satisfied. A presumption of causation will aid a plaintiff in meeting this burden, if before the accident, the injured person was in good health, but, commencing with the accident, the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be reasonable possibility óf a causal connection *146 between the accident and the disabling condition. To rebut this presumption, defendant must show that some other particular incident could have caused the injury in question.
(Citations omitted).
Additionally, under the Housley presumption, the trier of fact is not precluded from making determinations regarding the credibility of witnesses, and after weighing and evaluating the medical testimony, the trier of fact is free to accept or reject the opinion expressed by the medical expert. Harrington, 8 So.3d at 39. The application of the Housley presumption is a factual issue, which is reviewed by appellate courts under the manifest error standard of review. Id.
Under this standard, a court of appeal may not set aside a trial court’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Rosell v. ESCO, 549 So.2d 840 (La.1989). In Mart v. Hill, 505 So.2d 1120, 1127 (La.1987), the Louisiana Supreme Court enunciated a two-part test for the reversal of factual findings: first, the appellate court must find from the record that a | ^reasonable factual basis does not exist for the finding of the trial court; and, second, the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
In the instant case, Mr. Romero argues on appeal that he is entitled to the Hous-ley presumption because his testimony and medical records established that he was healthy before the accident, his claimed injuries manifested themselves after the accident, and the medical evidence demonstrated a reasonable possibility of a causal connection between the accident and his claimed injuries.
At trial, Mr. Romero testified that he was not experiencing pain prior to the accident and began to experience pain in his neck and back following the accident. The medical records reflect that Mr. Romero informed the treating physician that he was involved in an automobile accident and was experiencing neck and low back pain. The medical records also reflect that the treating physician diagnosed Mr. Romero two days after the accident with various strains and spasms in his neck and back; however, these records do not contain a medical professional’s opinion that these conditions were caused by the accident.
This Court has held that “Applicability of the [Housley presumption] is only appropriate when it has been established that plaintiff was healthy before the accident, was unhealthy afterwards, and there is a reasonable possibility of a causal connection between the accident and the injury.” Kelly v. Lugo, 01-542 (La.App. 5 Cir. 11/27/01), 802 So.2d 952, 955. For instance, in Kelly this Court found that the Housley presumption did not apply where there was a reasonable factual basis in the record for the trial court’s finding that the plaintiffs had not sustained injuries in a rear-end automobile collision. See id. .
Similarly, in the instant case, we find there is a reasonable factual basis in the record for the trial court’s finding that Mr. Romero did not sustain injuries in |7the accident. First, it was well within the trial court’s discretion to find Mr. Romero’s testimony that he was injured in the accident as “incredible.” Second, the police report indicates that Mr. Romero did not sustain an injury and that his vehicle sustained only “minor/moderate” damage in the accident. And third, in the absence of a medical professional’s opinion that Mr.' Romero’s injuries were caused by the accident, Mr. Romero has not demonstrated, with medical evidence, a reasonable possibility of a causal connection *147 between the accident and his claimed injuries. Under these circumstances, we cannot say that the trial court was manifestly erroneous or clearly wrong in concluding that Mr. Romero did no.t sustain injuries in the accident. Consequently, the Hous-ley presumption is inapplicable and Mr. Romero did not meet his burden of proving his claimed injuries resulted from the accident. This assignment of error is without merit.

DECREE

For the foregoing reasons, the judgment of the trial court in favor of appellee is affirmed.

AFFIRMED.

. See Housley v. Cerise, 579 So.2d 973 (La.1991).